23-7540. Judge Nardini, and may it please the Court, this is a straightforward trade dress case where the District Court's dismissal stands alone. Of the 56 packaging trade dress cases we found from the Southern District that we found in this posture, this is the only one that we could find that dismissed the case for failure to plead consumer confusion or non-functionality. The reason is clear. The District Court inverted the legal standard, requiring that the packages be strikingly similar rather than asking if they're so dissimilar that no question of fact exists. To agree with us, this Court need go no further than Bristol-Myers, where this Court held that a jury had to decide the question of consumer confusion over Tylenol PM and Excedrin PM, even though the Court viewed the well-known trade names as the most prominent feature of the packaging, which made the distinction much more obvious than here. Critically, we are not seeking to monopolize basic design elements. We're only challenging defendants' use of our distinctive style. The many dozens of other competitors' packages shown in both parties' briefs demonstrates that companies don't need to copy our look to compete, as well as the fact that our look isn't functional in any way. The defendant points to 27 examples of other competitors' nut packaging on pages 20 to 22 of their brief, which include many of the same black, green, and font elements we use, but we haven't sued any of them and we won't be suing any of them based on those designs. Those examples just show that you can have many of the same elements, but create a very different impression. If I can put this case in practical terms, the parties sell competing products in Amazon to the same snack consumers. That creates the real-world possibility that customers could purchase the defendant's product, believing they're somehow sponsored by us, like fans of the concanning— Let me ask you, so you've got no problem with the packaging on the red brief, pages 20 through 22? Correct. So tell me about the Kirkland Schilt Pistachios on page 21. Same green and black, right? It's got a window. It's got a large word PISTACHIOS in all caps in a sans serif font. I think that's actually a precise— Between those nut cravings. Exactly. I think that's a very good example of exactly the kind of case where you really could have these same elements that we're saying we are protecting— But my point is, how is that any better than the nut cravings? All the elements that you're talking about, that you're faulting nut cravings for having, are all there. Two responses, Your Honor. One, there is actually a different test when it comes to a Kirkland or Costco-style branding than applies to other companies who are competitors. So we wouldn't have sued Kirkland even if we did think that they had the same overall impression. But the more important point—  But the more important— No, I said why. Because I don't think we could meet that lower standard test as it applies to Kirkland, for whom that kind of different kind of packaging under their own label is subject to a different kind of trade— No, I'm saying what is that? Help me out there, because I guess that wasn't an issue discussed in the brief. So there's something about generic store brands that's different? That's right, Your Honor. But I guess that seems to me different, because you were saying before, oh, well, these others are all fine. And now you're telling me maybe it's not fine except for the fact that they're sold by Costco? No, no, no. And that's why the second point— Assume that they were not Costco. OK. Assume for the sake of argument that one is not Costco. I'm just using this for instance. Why would that not be infringing, but nut cravings would be? Help me out. Can you clarify which Kirkland we're talking about? Oh, I'm sorry. Not the jar, but the third one down on the left. The one that's black on green instead of green on black. You're going to tell us that black on green is different than green on black. Yeah, I'm curious to hear what's the difference. Just explain why those are different. So as we claim, we have a predominantly black package with green, bright accent colors. That is a predominantly green package with very little black shown on the display. But the more important point— Proportion of the black and the green is different. But I'm wondering, because each of the other distinct components you were talking about seems to be present here. Again, the word pistachios is large, all caps, sans serif. It has a window. What else? What else were the elements of your trade dress that you were saying were distinct? Because again, nut cravings has the word pistachios in all caps and sans serif. But theirs is white. This is black. Yours is green. So it can't be the color of the word. They've got extra words. So you have pistachios writ large. They've got roasted, salted pistachios writ large. They have shelled pistachios in the Kirkland one. You're going to have to talk about some of the components. Of course. What is it— Again, focusing on that, that you just told me that all these on pages 21 through 22 are fine. And I'm trying to understand, well, if 21 is fine, the Kirkland on 21 is fine, what is it about the nut cravings that's not? Except for you did point out that black is predominant as opposed to green. Is that the only material difference? In addition to those material differences, the fundamental point is that that doesn't look anything like our packaging, such that it would call to mind— They look at it. That's a conclusion. And I'm asking you to break down, what is it in your view makes it not look like that? Respectfully, Your Honor, I don't think that's the ultimate conclusion. There are two different factors. Okay, well, tell me why it doesn't look the same. It doesn't. So if you compare them to the images on page one of our brief— Yeah, I'm looking at them. Tell me this stuff. It looks different. So, look, we believe that when a consumer—and this was our allegation— when a consumer is quickly scrolling through Amazon using their phone on a four-inch screen and they see defendant's packaging, they might think that it's part of what's associated with us. Why? I get it. You're saying they're confused. I'm asking you, tell me when we're looking at them, what is it you see that is confusing? We think that when they see the Kirkland version you're discussing— First of all, they won't find that on Amazon. That's Kirkland brand. But when they see the Kirkland version— I'm talking about similarity. Your Honor, I thought you were asking me about the Kirkland version. Hang on. I get it that there are other Polaroid factors, and I appreciate that. Right now, I just want to focus on similarity, that factor. So if you could focus on that factor for a moment, you have the ability to then tell us why other factors matter or don't matter. So the question— Help me with that. Sure. So the question for our purposes is whether a reasonable juror could agree that the defendant's packaging has the same overall impression as ours. Right. And I'm asking you to explain why. And that is because it has a lot of the same features, like you discussed, as are included in the Kirkland version of packaging. We didn't sue Kirkland because we don't believe that there would fall to mine. You don't have to sue Kirkland, right? Exactly. If Kirkland is infringing up the wazoo, you're entitled to let them do it, I suppose, at least until such point as your trademark gets diluted in some way, I guess. I don't know if that— That works with— Maybe this is a— —intellectual property. Sure. But you don't have to sue them. You sued them. Right. You sued them. And the district court said that it is not even plausible that a jury applying the Polaroid factors could find that these two things are confusingly similar. And you think that's wrong. Thank you, Your Honor. That is precisely my point. And even if this court is worried that we could overcome a plausibility standard as to that one Kirkland package, we're not sure that we could. Well, it wasn't that. It was my point is that you were telling us that the Kirkland package is not infringing. And I was asking you how you hold those two thoughts in your mind at the same time, that the Kirkland package is fine, but the Nut Cravings is not. And I was asking you to explain what the material differences were. And the only one I've heard so far is that the Nut Cravings is predominantly black with green accent, as opposed to the Kirkland one being predominantly green with a black accent. So if you have any other aspects of the packaging that you'd like to point out, to point out why you hold a different view, your client takes a different position as to the two packaging, you can answer that. But other than that, you're over your hat. Can you just say, because it's a very, very big difference, that one is a black package and one is a green package, and to any consumer looking at it, one looks green and one looks black, and so they look entirely different? Yes. Is that your answer? Yes. And a reasonable jury can so conclude. What's the line then? Because he's been asking for it for five minutes. I'm wondering if that's it, then fine. But I'm trying to figure out if there are other... Yes. Yes. And a reasonable jury could agree. Which is why we get past... Why don't we hear from your adversary? You've held three minutes. Attorney Hudak. Thank you, Your Honor. My name is Sandra Hudak. I'm here on behalf of Not Craving Zing. Why don't we just wait one second? We have some of our visitors who I think have enjoyed their time here, and I want to make sure we don't have any background noise that prevents us from hearing everything that you're about to argue. How's that? Thank you, Your Honor. Shall I begin? Yeah, let's just wait. Let's wait for the doors to close, because sometimes they slam. And again, I don't want you to wind up being interrupted in the middle of your argument. Okay, why don't you go ahead now? Thank you. May it please the Court. The reason that we're here today is that plaintiffs want to own the colors black and green for the packaging of nuts. And they try to use the cost of litigation to do that. Indeed, when the original complaint in this case was filed almost four years ago, plaintiffs originally defined their unregistered trade drafts as a predominantly black rectangular package with a green accent color. But the Court dismissed that claim. Among other reasons, the Court found that plaintiffs failed to plausibly allege that they had trade drafts rights in a black and green rectangular package. Another ground for dismissal? Now, they have alleged more than that, right? I mean, they also say that they have the word pistachio in a particular typeface, in particular, all caps, right? And they have the windows in a certain shape. So I don't think that they're claiming that they have a monopoly on black and green, period. Are they claiming that? So after the Court originally dismissed their original iteration of their trade drafts, they changed it. They dropped the rectangular part, and they added these other features. And that's where we are now. Yes. So where we are now, it requires also the pistachios and the sans serif font and capital letters. And it also requires the wonderful mark. And plaintiffs have never explained how defendants— Mr. Nenek, when I read the district court's opinion, my first reaction, before I even looked at anything, was, boy, this sounds awfully like findings of fact and conclusions of law after a bench trial. It could kind of pass for a decision on summary judgment on a full record about what the reasonable jury could find. But it is at the pleading stage. And even under Twombly and Iqbal, the standard is, is it not, whether the plaintiff has asserted a plausible claim. Yes, that's correct. They must— And isn't the substantive standard that they have to meet something to do with the overall look and feel and whether a reasonable consumer could be confused between the two packages? Isn't that ultimately what they would have to prove in order to prevail at trial, say? The ultimate— That's the ultimate issue here. —issue would be a likelihood of confusion. A likelihood of confusion, right? And so what you are telling us and what the district court is telling us is that it is not even plausible that a jury could find that a reasonable consumer might find the these two packages confusingly similar. Isn't that what you and the district court are telling us? Yes, it's not plausible that the two packages are— And why shouldn't I think otherwise? Because it looks to me like these are confusingly similar. I know that's not the test either. It's not up to me to decide. It's ultimately up to a jury to decide if the case gets that far. But it seems to me very difficult to maintain the proposition that this does not state a plausible claim of confusion. The predominant color is black as opposed to green. Of all of the other folks, none of them look like that, all the other ones that are in the red brief. It's got the sans serif typeface. At least one of the Costco ones doesn't have that. It has the window. I'd hate to see the window be declared to be their property, and I don't think they claim that that alone is because that does seem functional in the sense that it lets the consumer see the actual nuts that are in the package. But when you put all of those things together, I just find it kind of inconceivable that that's not a plausible claim. I know the Polaroid factors are complicated, and the district court does an admirable job of tracking through them all, and maybe somebody else might track through them differently. But it just seems to me when you add it all up, that's what we're faced with. We're faced with a holding that these no reasonable juror could conceivably find that a reasonable consumer might be confused about which package comes from the wonderful company, given maybe you should put wonderful in a bigger type on here. But they look like they're the same. So we have to look at this in the context of trade dress, and trade dress only gives the plaintiffs limited scope as to what they have established they have rights in. And they have to establish that there's secondary meaning in what they're claiming to be trade dress. Yeah, but they have a lot of stuff on that. All those, there's lots of allegations about that. They say they spend millions of dollars. I think I actually remember seeing some of those commercials. They say, no one disputes, and no one could dispute at this stage because it's the 12B6 stage, so this has to be taken as true, that they actually took a lot of trouble with their ads, not just to plug the wonderful company, but to plug this package so that people would associate this package with their product, right? So why doesn't that, you know, that may not suffice to convince a jury that there's secondary meaning. Maybe they'll need surveys and other stuff by the time the case gets to the end. But at the beginning, that's pretty solid, isn't it? So when plaintiffs tried to assert that their trade dress was a black and green package, they could not meet the standard of showing secondary meaning. I don't know. The district court said that. But I didn't say that. This court didn't say that. The Supreme Court didn't say that. So I don't know why we have to take as a given that their first complaint wouldn't do. The district court thought the second complaint didn't do, and that's the one that we're assessing here. The point is that once they define their trade dress, they defined it with these elements. And we have to look at the similarity in view of those elements, as well as the overall context. Can I ask, let's say for the sake of argument that this case were to survive 12 v. 6 and go on to the next stage, discovery, development of all the facts and an evidentiary record, at which point it would be subject to summary judgment motions that potentially could be granted or denied. You don't know. What's your view of how the record could be developed? And what I'm thinking in particular is, let's say as of now in the 12 v. 6, we think, okay, there are certain facts that we know, like the pictures of the packaging. But what if your opponent put in a survey from an expert demonstrating actual customer confusion or consumer confusion? Would that change the calculus? That's not the stage that we're at here. Here, they haven't pled any facts that would support likelihood of confusion or the substantial similarity. So you're saying that because they haven't pled the actual confusion in the complaint, they have not put down a marker to say, and that's one of those things that we'd like to back up in the discovery phase with some evidence. I mean, they could have done that. They could have conducted a survey before filing the complaint if they wanted to do so, but they didn't. And the point— Again, just humor me. Hypothetically, if their complaint had included paragraph, make it up, 72, that said, and we have a survey of 1,000 pistachio consumers, and 70 percent of them, when they looked at the nut cravings, thought that they were from the wonderful company. Would that, in your view, have substantially changed the outcome of the 12B6 motion? It would have been an additional fact to support a finding of likelihood of confusion, and the point is that it's not here. And when you look at the two packages together and look for the semicircular windows, which is an element of the unregistered trade dress, and the transparent side windows of the registered trade dress, those aren't in Nut Cravings' accused product, and neither is the wonderful mark, and plaintiffs have never explained how the absence of that element could—how there could be substantial similarity without that element, and in fact— Are you suggesting that in order to have a trade dress claim, they would only have a trade dress claim if you put the word wonderful on your package? No, it wouldn't only be— So they wouldn't have to have every piece of their trade dress matched by yours, right? But maybe it would say Wonder Nuts, or maybe it would say something else that's similar. Right, but they don't have to have every element matched, right? If several of the elements match, and the overall look and feel of the product look extremely similar to the naked eye of the non-trademark lawyer, wouldn't that suffice to carry the day, even at trial? There has to be an overall similarity between the two products, and— If there is an overall similarity, and there are identifiable common elements that match the trademark, would that not be the question for the jury, right? Are those elements enough to make it confusing? That's the question the jury would have to decide. Is that not right? Critically here, the brand name is very— Is that not—you know, when you get—this is what I teach my students in appellate advocacy. When you get a yes or no question, you answer yes or no, and then you explain it away. Is that not what the jury would be asked to decide, ultimately? And the—I mean, there has to be, first, the finding of an overall similarity, and here it doesn't exist because of the substantial differences— You're saying that it doesn't exist because you're giving a list of the ways that don't match. Mr. Wifter is giving a list of the things that do match. And the jury would take those arguments into account in keeping with their overall impression and figure out whether, as a totality, applying all of the many Polaroid factors that would be carefully explained, tediously explained to them by the trial judge—I know because I've tried cases like this—applying all of that, they would make a factual determination of the outcome. Isn't that correct? The issue here is that the elements that do match—the plaintiffs don't have a right to exclusivity in those elements. That's right. They don't have a right to exclusivity in any one of those elements. You can have a black package. You can have a green package. You could have sans-serif type. You could have the cutouts, thank goodness, because then I can see the nuts before I buy them. They can have the word wonderful. All of those are pieces of the overall look. If you copy three of them but not the other two, or you copy two of them but not the other three, then the jury ultimately makes a decision which are more important, the two or the three. If it's a lot of black, maybe the black carries more weight. If it's the word pistachios in green, maybe that carries weight except that probably most people would think pistachios are green. So if you put the word pistachios in green, that's not that distinctive. You know, they'll look at all these things and make a decision. Why is this something that can—do you have a precedent where this court has upheld a dismissal of a claim like this at the 1236 stage? In the Alaia case, it was a trade dress case, and the court affirmed a dismissal, motion to dismiss. In a regular trademark case, the E.A. Sweene case was decided on a motion, was at the pleading stage, and it was affirmed. A trade, regular trademark case. That was a trademark case. So there's one trade dress case, and how different were those things? I mean, we have a photo of the shoes in our brief. I don't have the page site. Okay, I'll take a look at that and see how dissimilar it is. But it seems to me that's a rather difficult burden to reach, right? Turning back to your hypothetical, if the elements that are shared are not protectable on their own, that can't be a point for similarity. Why can't they be protectable in combination? That's really the whole point, isn't it? But those—the black and green elements in combination are not protectable. It's only when you add the wonderful mark and the semicircular windows, according to the pleadings, that it becomes— Well, let me ask this. I don't know about the wonderful mark. Well, let me do this. Turning to page 8 of your red brief, you've got this picture of all the different wonderful packages, which show that for one particular product, they've got this black and green. But they've got all these other packagings that are blue and brown and yellow and whatnot. My understanding is that those images were not in the complaint. Is that correct? That that was something that your site submitted in a motion to dismiss? Yes, these are printouts from the plaintiff's website. So is that—my understanding is that that would not be something that would be appropriate to consider on a 12B6 motion, right? I mean, that's just basically like adding stuff to the record. That's the kind of thing that one would look at potentially in summary judgment, right? The Court can take judicial notice of the existence of a website. We also attached a complaint from a different case where the plaintiff had alleged that their trade dress was black and orange or black and some other accent color. I guess where I'm going with this is I understand one of your arguments, maybe one of your subsidiary arguments, is that if you look at the trade dress collectively of all of your adversaries' products, you will see that this business of focusing on black and green is something—I'll put words in your mouth that may be unfair—but a red herring. And in fact, their trade dress is much more focused on the idea of having the two circular windows on the side with a vertical, sideways, all caps, word pistachio, in whatever color may be convenient for their packaging, and that that combination is what is so distinctive and stands out in the consumer's mind that that's really the trade dress and that nobody who knows and likes their product would ever be confused by anything that doesn't have the side circular windows and everything. And I guess if that's your argument, though, it seems like a summary judgment argument. Maybe it's persuasive. Maybe it's not. But it winds up depending on all this other evidence that, who knows? We go to discovery and both sides may put forward all sorts of evidence. Well, there's two claims here. One is in the unregistered trade dress, and one is in the registered trade dress. And the registered trade dress is dictated by the description of the trade dress in the  And in that registration, there's a detailed description of what plaintiffs are claiming as their trade dress. And that's focused on the black one, the black and green, right? They register the black and green at the registered trade dress, right? They have a couple of different registrations, which we include in our brief. The one they're asserting here is the 188 registration. And that requires the wonderful mark in white on the top with the heart in place of the O. It requires the pistachios, the word pistachios, in green going vertically. And it requires these transparent side windows. And all of these different colored ones are flavored pistachios. That's the black and green, or the black anyway. The predominantly black version are the plain. The, I believe that the black and green is their original salted. And when they use black and blue, it's like lower salt. Some of the black ones have flavors. Honey roasted, chili roasted, lightly salted, sea salt and vinegar, and barbecue are the ones in the different colors. But again, isn't this exactly why we'd want there to be a more developed record? That not only would you be able to put these things legitimately before the court, you could cross-examine them in depositions about what this looks like and why. They would be able to explain what they think about these various kinds of packages. I mean, you know, we're just trying to jump the gun and decide the case at the first step before anything has actually happened. The purpose of including that image was just to show the color, the flavor of what plaintiffs are trying to do here, is to claim exclusivity on something that they don't have. Yeah, that may all be true at the end of the day. But once again, if the registered version, at least, doesn't talk about these other colors, or if they have a separate registration for, same as the other one, only in reddish because it's chili roasted, then they've got a separate registration, and you couldn't have chili roasted pistachios in orange in a package that looks like this. Anyway, can I get to one other thing before, because we're taking up a lot of your time, but can you give me an idea of what might be functional about any of the elements of this? I guess other than having a window of some shape or size, is there anything at all that is functional about black, green, sans serif as opposed to serif typefaces? Is there anything functional about any of that? Yes. First of all, it's plaintiff's burden to plead non-functionality in their complaint. I'm sorry. But they say, what they say is, there's a million ways you could package these things. What is it, I mean, what do they have to say? How can you say a negative in a non-conclusory way? How can you say, this just isn't functional? There's nothing functional about any of this. How do you back that up with specific allegations? Can you tell me either that, or maybe you can suggest that in the real world, as opposed to in some artificial lawyer's world about pleading, in the real world, is there actually any conceivable functional purpose to any of these elements, or certainly to the combination of them? Sure. So two things. One is, we cite a few cases in our brief at pages 19 to 22, explaining that just pleading that there are alternative options is not sufficient to plead non-functionality. Two, how would you... Maybe you better try answering the first question, then, before the second one, which is, what, if you were making a trade dress claim, how would you give a non-conclusory account of why something is not, something that is obviously not functional, like a color on a package, how would you allege that that is not functional? Sure. So the color black is functional in that it conveys the element of a luxury product, and that is a significant non-source-relating aspect, that if others are not allowed to use black, they can't convey the same message of luxury. Same with green. Pistachios are green, and green also represents nature. And so to say that anyone can't use green... The Walgreens product is blue. Their pistachio package is blue. They don't have any green on it. So, like, their pistachios go bad on the shelf because their package is blue? The fact that it can be another color doesn't mean that there isn't an advantage to using black or using green. Why don't we just do this? If you could just take no more than 30 seconds, please finish your answer to Judge Lynch, but we want to make sure we get to your opposing counsel. Sure. So I would submit that we have some case law explaining in our brief that black can be a functional aspect. We also have some case law talking about the windows. We also have some case law talking about the sans-serif font and capitalization that makes it easier to read. And there's only so many options of font that you can use.  Well, thank you very much for your argument. We appreciate your allowing us to keep you up there. Why don't we hear for an additional three minutes? Thank you. We'll try to limit it to three, because we've been talking about this case for a long time. Of course. Thank you, Your Honors. I want to start with where the discussion ended, which I think is a very good explanation for why it's so dangerous to kick this case out at this stage. They point to extra complaint evidence on page eight of the brief, as you've pointed out, showing registrations we have in other colors. But the very reason... That's the kind of thing, in your view, let it all develop in summary judgment, get your discovery out. Absolutely. Maybe it helps, maybe it hurts. Exactly. And what will be developed in summary judgment is what the record will show is we have spent all those $500 million in 10 years of effort in advertising only the distinctive trade dress at issue in this case. And that is why the district court correctly held that we had sufficiently articulated the dress and that it had acquired secondary meaning such that it is a strong trade dress that calls to mind, in the consumer's view, our brand. The other side elected explicitly in their briefing not to challenge those holdings on appeal. They said so directly in their brief. They also brought up Alaia as a case in which finding of no likelihood of confusion at the motion to dismiss stage was affirmed. Critically, as we explained in our brief, that is a product design case, not one of the 56 pure packaging trade dress cases we spoke about in the opening. When it comes to pure packaging cases, of the 56 we identified at the motion to dismiss stage from the Southern District, as I explained, this was the first one to dismiss on the basis of the failure to plead consumer confusion or non-functionality. And on the point about functionality... Can you remind me of the Dentine Ice case? Is that Nabisco? The Dentine Ice case. The Dentine Ice versus Ice Breakers. I'm trying to remember the opinion written by Judge Winter. I'm trying to remember the name of the case. Sometimes these things escape me. I remember the products, not the case name. But that was one where they said that the similarity of the packaging was decisive. And I can't remember the posture of the case, but it struck me that because they were simply looking at the packaging, whether it had been 12 v. 6 or it had been summary judgment, it sounds like it would have come out the same way. Do you happen to remember the posture of that case? It's escaping me right now. I don't happen to. And I also don't remember if that's a Southern District case or not. That's my... And I just have two final related points. One procedural, one going to some of the argument that was just made. First, the District Court only compared our trade dress to one of defendant's pistachio packages. But the complaint challenges defendant's use of our distinctive look on all their snack packaging, which includes things like pretzels, corn nuts, and dried cranberries. And I think the upshot is that at a minimum, there should be a remand for further proceedings on those other package designs. But second... I'm sorry to break your flow there, but just to clarify, we've been talking about trade dress and we haven't really been parsing out the registered and the unregistered. They're not coextensive though, correct? That's... I mean, they're coextensive in all material respects as the arguments have developed in this case, Your Honor. Okay. So when you're discussing now, when you're saying trade dress, you're just sort of... It's both of them. It's one of them. What is it that you're... I mean, certainly... Because they're not exactly the same. Like you allege more elements, I guess, with the unregistered trade dress than with the one that's registered. And that's exactly why there should be a remand on both. Because if we allege more, if the unregistered is even more specific, then it can't be that it's functional when the registered one is not. And in that regard, I just want to make the final point that the fact that they're using our strongest green, black, fonts, et cetera, trade dress to sell things like pretzels, corn nuts, and even bright red cranberries seems like a good indication that they don't really believe it when they say they must be allowed to use the same precise combination of colors in their hues and style elements that we chose because green is the color of pistachios. Thank you, Your Honors. All right. Thank you both very much. We appreciate your arguments and we will take the case under advisement. Have a wonderful day.